UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SANDRA ALCANTE, RUBEN FLORES, ERIC ALCANTE, ANTONIO FLORES, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No: 2:11 CV 125 ) |
| HRB TAX GROUP, INC., ROSETTA Y. BUCHANAN, FRANCESCA FOSTER, | ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiffs Sandra Alcante, Ruben Flores, Eric Alcante, and Antonio Flores filed a complaint against defendants HRB Tax Group, Inc. ("HRB"), Rosetta Y. Buchanan, and Francesca Foster in the State of Indiana's Lake County Superior Court on February 25, 2011. (DE # 1.) Plaintiffs allege that while Foster and Buchanan were employed by HRB, Buchanan and Foster filed unauthorized tax returns for plaintiffs and retained the refund in the amount of $6,114. (*Id.*) Defendant HRB removed the action to federal court on April 11, 2011, on the basis that federal jurisdiction exists due to diversity jurisdiction and because the complaint involves questions of federal law. (DE # 2 ¶ 5.) On May 11, 2011, plaintiffs filed a motion objecting to removal and petitioning for remand to state court. (DE # 9.) Defendant HRB filed a response (DE # 11) and plaintiffs filed a reply. (DE # 12.)

To begin, the court notes that in the briefing on this motion, HRB appears to have abandoned its argument that federal question jurisdiction exists in this case. In their

complaint, plaintiffs mentioned that Buchanan and Foster violated federal statutes 18 U.S.C. § 1028(a)(7) and 18 U.S.C. § 2. However, in their petition for remand, plaintiffs point out that these are criminal statutes that do not create private rights of action. (DE # 10 at 5.) In its response in opposition to remand, HRB argues only that diversity jurisdiction exists in this case and not that federal question jurisdiction exists. Thus the parties have properly focused on the issue of diversity jurisdiction and the court will as well. Federal question jurisdiction does not appear to exist in this case.

Accordingly, subject matter jurisdiction over this case in this court would lie in diversity jurisdiction under 28 U.S.C. § 1332. (DE # 1 at 2.) Under the rule developed in *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity must apply federal procedural law and, in the absence of any countervailing federal policies, substantive state law. *See Hanna v. Plumer,* 380 U.S. 460, 473 (1965). Thus, in this case, federal law provides the jurisdictional standard and state law provides the standard for what damages could be recovered and included within the amount in controversy. Both parties rely on Indiana law for their damages estimations. Thus, because the parties seem to agree that the substantive law of the forum state, Indiana, applies and no party points out significant differences between Indiana and Missouri, Illinois, or Wisconsin law, the court will apply Indiana law to the issue of damages. *Gould v. Artisoft, Inc.,* 1 F.3d 544, 549 n. 7 (7th Cir. 1993); *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 677 (7th Cir. 2007).

In order for subject matter jurisdiction to exist in this court, there must have been

complete diversity when the case was filed and the amount in controversy must have exceeded $75,000 exclusive of interest and costs. *See Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004). The parties agree that there is diversity of citizenship in this case, but they disagree about whether the amount in controversy requirement for diversity jurisdiction is satisfied. (DE # 10 at 4.)

Once a party opposing federal jurisdiction challenges the estimate of the amount in controversy, the party seeking the federal forum must establish the amount in controversy at the time of removal between the parties by providing a good faith estimate that is "plausible and adequately supported by the evidence." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) (citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006)). In Indiana, this requirement is complicated for removing defendants by the state rule prohibiting plaintiffs from pleading what they hope to recover from their complaint. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006); IND. TRIAL R. 8(A)(2). Once the proponent of federal jurisdiction has explained plausibly that the stakes exceed the required amount in controversy, "the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Blomberg*, 639 F.3d at 764; *Back Doctors Ltd. v. Metro. Prop. and Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011).

In this case, plaintiffs' complaint includes Count I, a claim of negligence, including negligent hiring, against HRB, Foster, and Buchanan and Count II which includes claims of conversion, fraud, theft, and identity theft against Foster and

3

Buchanan. For the intentional torts claim against Foster and Buchanan, plaintiffs allege that they are seeking treble damages, punitive damages, attorney fees and costs, the costs of the action and "all other proper relief in the premises." (Pls.' Compl. at 4.) For the negligence claim, plaintiffs ask for "compensatory judgment in the premises against" all defendants "for costs of this action, and for all other relief proper in the premises." (*Id.* at 2.)

Plaintiffs argue that the amount set into controversy by the complaint is not more than $75,000. (DE # 9 at 4.) HRB argues that the amount in controversy is greater than $75,000 because in May 2011, a month after removal, plaintiffs would not stipulate to damages of less than $75,000 and this failure means that the amount in controversy is more than $75,000. (DE # 11 at 1, 4-5.) It contends that the amount in controversy for any individual plaintiff is more than $75,000 because in Count II of their complaint plaintiffs seek actual damages, treble damages under the INDIANA CODE, punitive damages, and attorney fees. (*Id.* at 4.) It states that the amount of punitive damages alone could be more than $75,000. (*Id.* at 5.) It also argues that plaintiffs' settlement demand of $55,000 shows that the amount in controversy is easily greater than $60,000. (*Id.* at 6.)

Plaintiffs argue that the amount in controversy is less than $75,000, and that on April 11, 2011, the day of removal, they informed defendants that "their evaluation of the claims was $55,000.00 for all plaintiffs combined." (DE # 10 at 4.) They state that they made a settlement demand of $55,000 and HRB responded with a counter-offer of

4

less than five percent of that demand. (*Id.*)

The court must now determine what damages under state law are possible under the complaint. Actual damages, including treble damages, and punitive damages can be counted towards the amount in controversy if they are allowed by state law. *LM Ins. Corp. v. Spaulding Enters.*, 533 F.3d 542, 551 (7th Cir. 2008). As explained above, HRB states that the amount in controversy includes actual damages, statutory treble damages, punitive damages, and attorney fees. (DE # 11 at 4.) The complaint states that Buchanan and Foster wrongfully retained plaintiffs' tax refund of $6,114. (Pls.' Compl. ¶ 4.) Thus actual damages appear to be $6,114, and HRB does not provide an alternative estimate. (DE # 11 at 4.)

INDIANA CODE allows plaintiffs in civil actions who are crime victims to recover damages of three times their actual damages. IND. CODE § 34-24-3-1. Buchanan and Foster have been criminally convicted for their actions. (DE # 10 at 5.) Accordingly, it is certainly plausible that plaintiffs could recover treble damages. However, Indiana law only allows a plaintiff to recover treble damages under INDIANA CODE § 35-43-3-1 **or** punitive damages. IND. CODE § 34-24-3-3 ("a person may not recover both: (1) punitive damages; and (2) the amounts provided for under [INDIANA CODE § 34-24-3-1 or § 34-24-3-1.5]").

HRB's estimate of damages focuses on plaintiffs' ability to recover punitive damages. In an action arising under tort in Indiana, punitive damages can be awarded if the defendant's misconduct was wanton or willful. *Orkin Exterminating Co. v. Traina*, 486

5

N.E.2d 1019, 1023 (Ind. 1986). While the complaint does not allege that HRB acted wantonly or willfully, the court will accept HRB's argument that plaintiffs might seek punitive damages against it. (DE # 4.) In Indiana, as of 1998, a plaintiff can recover punitive damages of not more than the greater of $50,000 or three times the amount of compensatory damages awarded in the action. IND. CODE § 34-51-3-4.[1] Three times the amount of compensatory damages is $18,342. So the most plaintiffs can recover for punitive damages from HRB is $50,000. Therefore, based on HRB's estimate of the amount in controversy, the most that any plaintiff could recover for compensatory and punitive damages from any defendant is $56,114.[2]

---

[1] INDIANA CODE § 34-51-3-4 provides:

A punitive damage award may not be more than the greater of:
(1) three (3) times the amount of compensatory damages awarded in the action; or
(2) fifty thousand ($50,000).

[2] To reach the amount in controversy, a punitive damages award at the $50,000 limit would need to be assessed either for each plaintiff against one defendant or against more than one defendant for a plaintiff and these punitive damages would need to be aggregated. However, generally, under the anti-aggregation rule, the amount in controversy must be met as to each plaintiff and each defendant. *See Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir. 2000). HRB does not argue that any exceptions to the anti-aggregation rule apply in this case. Instead it argues that any individual plaintiff's claim could be more than $75,000 because of the possibility of high punitive damages awards. (DE # 4.) In any event, based on the estimate of the amount in controversy before the court, it does not appear that any exceptions to the anti-aggregation rule would allow HRB to escape the problem with federal jurisdiction presented by Indiana's cap on punitive damages.
   For aggregation of punitive damages claims among plaintiffs, plaintiffs must have a joint claim arising out of a common and undivided interest in the property involved in the claim. *In re Brand Name Prescription Drugs Antitrust Litig.*,

The next question is whether attorney fees, the last category of damages that HRB includes in its estimate, can bring the amount in controversy above $75,000. HRB is correct that attorney fees may be counted towards the amount in controversy requirement for federal jurisdiction. *Gardynski-Leschuk v. Ford Motor Corp.*, 142 F.3d 955, 958 (7th Cir. 1998). However, because the amount in controversy must be measured from the time of removal, only attorney fees incurred up to that time can be counted towards the amount in controversy. *ABM Sec. Servs., Inc. v. Davis,* No. 11-8001, 2011 WL 2417104, at *3 (7th Cir. June 16, 2011).

In order for plaintiffs to have an amount in controversy of over $75,000 as to any defendant, their pre-removal attorney fees must equal $18,887. HRB has not made any estimate of what the pre-removal attorney fees would be and does not make any showing that they could plausibly be $18,887. The United States Court of Appeals for

---

123 F.3d 599, 608 (7th Cir. 2000). For the amount in controversy to be aggregated among two or more defendants, defendants must be jointly, and not severally, liable. *LM Ins. Corp. v. Spaulding Enters.*, 533 F.3d 542, 548, 552 (7th Cir. 2008). No argument has been made here that the plaintiffs have a joint claim, although that seems possible since the complaint mentions only one tax refund, or that defendants are jointly liable.

    If plaintiffs have a joint claim arising from a common interest, allowing their damages to be aggregated, it appears that they would only be able to recover one $50,000 maximum punitive damages award because they would have only one claim. *See e.g., Johnson v. Fortis Ins. Co.*, No. 2:05-cv-20, 2006 WL 1707242, at *5 (N.D. Ind. June 15, 2006); *Matusiak*, 2006 WL 1806403, at *2. Further, aggregation of claims against defendants depends on the defendants having joint liability. However, punitive damages are assessed individually. *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) (citing *Bosco v. Serhant*, 836 F.2d 271, 281 (7th Cir. 1987) (explaining that while joint and several liability applies to compensatory damages, punitive damages are assessed separately)). Thus it does not appear that HRB could be jointly liable for separate maximum punitive damages awards of $50,000 against either Buchanan or Foster.

the Seventh Circuit has explained that it is "quite plausible" that pre-removal legal work in a class action lawsuit could exceed $5,552. *ABM Sec. Servs., Inc.*, 2011 WL 2417104, at *3-4. In contrast, in *Matusiak v. Am. Family Ins. Co.*, a case with two plaintiffs, the amount in controversy consisted of $8,700 of compensatory damages, $50,000 of punitive damages, and attorney fees. No. 1:06-cv-743, 2006 WL 1806403, at *1 (S.D. Ind. June 29, 2006). The trial judge noted that the amount in controversy could only be met if the pre-removal attorney fees were higher than $16,300. (*Id.* at *2.) The judge stated that this amount of attorney fees for a claim of $8,700 was highly unlikely and that the defendant had not made any showing that these types of fees were incurred before the suit was filed. (*Id.*) For those reasons, the court found that the amount in controversy requirement was not met. (*Id.* at *2-3.)

The case at hand is more analogous to *Matusiak*. HRB has made no showing, or even estimation, that the pre-removal legal work in this case could have approached $18,887. It seems implausible that plaintiffs stand to recover $18,887 of pre-removal attorney fees in a non-class action lawsuit with actual damages of $6,114. Therefore, HRB's estimate of an amount in controversy of over $75,000 in damages for any plaintiff does not appear plausible.

Further, HRB makes much of the plaintiffs' refusal to stipulate to damages of less than $75,000[3] and of their request for a settlement of $55,000. It argues that plaintiffs'

---

[3] Plaintiffs argue that they were willing to stipulate to damages of less than $75,000 but they were not willing to stipulate to a condition that HRB tied to that

8

post-removal refusal to stipulate to damages of less than $75,000 was "dispositive" of the issue of the amount in controversy. However, as the Seventh Circuit has explained, "events after the date of removal do not affect federal jurisdiction, and this means in particular that a declaration by the plaintiff following removal does not permit remand." *Back Doctors Ltd.*, 637 F.3d at 830. Therefore, even if plaintiffs stipulated to damages of less than $75,000 in May of 2011 as HRB proposed, that stipulation would not have meant that the amount in controversy requirement was not reached. In that same vein, plaintiffs' failure to stipulate to damages of less than $75,000 after removal does not automatically mean that the amount in controversy was more than $75,000 at the time of removal.

Second, even if stipulations or settlement demands made after the time of removal could be relevant, they certainly are not in a case like the one at hand in which the plaintiffs cannot recover more than $75,000 from HRB even if they want to. HRB cites to *Rising-Moore v. Red Roof Inns, Inc.*, for the idea that a willingness to accept a settlement of $60,000 "supports a conclusion that the 'controversy' exceeds $75,000." 435 F.3d 813, 816-17 (7th Cir. 2006). But based on HRB's estimate of the amount in controversy, it is not possible for plaintiffs to recover more than $75,000 from HRB because of Indiana's limit on punitive damages. Therefore, the requested settlement amount cannot suggest that the amount in controversy is more than $75,000.

---

concession - that they would not seek damages against HRB for the actions of Foster and Buchanan as alleged in Count II. (DE # 12 at 3.)

In sum, HRB's estimate of the amount in controversy here rested on the erroneous assumptions that plaintiffs could recover an unlimited amount of punitive damages and that they could recover both treble damages and punitive damages. In fact, under Indiana law, plaintiffs can recover only treble damages of $18,342 or punitive damages of up to $50,000, leaving the amount in controversy well under the jurisdictional requirement even with the inclusion of attorney fees. Therefore HRB's estimate of the amount in controversy in this case is both implausible and legally impossible.

For the foregoing reasons, this court hereby **GRANTS** the **MOTION TO REMAND** (DE #9) and **REMANDS** this case back to Lake County Superior Court. The clerk is **DIRECTED** to return the case file to Lake County Superior Court, Lake County, Indiana, accompanied by a certified copy of this order and a copy of the record of proceedings in this court.

Date: July 13, 2011

**SO ORDERED.**

s/James T. Moody\
JUDGE JAMES T. MOODY\
UNITED STATES DISTRICT